THE PEOPLE OF THE STATE OF NEW YORK ex rel. HELEN G. STRONG, Respondent, *v.* MATTHEW F. HART et al., Comprising the Board of Assessors of the City of Olean et al., Appellants.

Tax — assessment of real property for taxation — market value — meaning of and method of determining such value — inequality of assessments — method of showing such inequality.

1. Since it is the market value of property which must be arrived at for the purpose of assessment, when it is claimed by the assessors that a tract of land has a value for a particular purpose it must be shown that it is marketable for that purpose or has an intrinsic value.

2. A property owner claiming to be aggrieved by inequality in the assessment of his real property is at liberty to attack the assessment by comparing the gross valuation placed upon his property with the gross valuation of other similar property upon the assessment roll; and he is also at liberty to compare the assessed valuation placed upon his land alone with the values placed upon the land only in the case of other properties of like character and situ-

33

ation. This rule is not affected by the provisions of section 21a of the Tax Law (Cons. Laws, ch. 60; amd., L. 1911, ch. 117) requiring that there shall be set down in an additional column on the assessment roll the value of the land exclusive of the buildings and that the total assessment only can be reviewed.

*People ex rel. Strong* v. *Hart,* 166 App. Div. 907, affirmed.

Argued November 16, 1915; decided January 4, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 7, 1914, which affirmed an order of Special Term reducing on certiorari an assessment for purposes of taxation on property of relator.

The facts, so far as material, are stated in the opinion.

*D. L. Jewell* for appellants. The Tax Law requires the assessors to assess land and improvements separately. It either requires the courts to review the assessment in the same way or it means nothing. The assessment was reviewed upon evidence and reduced upon findings as to the value of the land and improvements as a whole and it was error. (L. 1911, ch. 117; *N. Y. Tel. Co.* v. *De Noyelles Brick Co.,* 154 App. Div. 845; *Matter of N. Y., W. & P. R. Co.,* 151 App. Div. 50; *M., etc., B. Co.* v. *Patterson,* 98 U. S. 403; *Matter of Simmons,* 130 App. Div. 350; *Matter of City of New York* v. *Allen,* 106 App. Div. 262.) The petition and the objections filed by the relator with the assessors were insufficient to support the writ as to inequality. (*People ex rel. Fiske* v. *Feitner,* 95 App. Div. 217; 180 N. Y. 536; *People ex rel. W. S. R. Co.* v. *Adams,* 125 N. Y. 471; *People ex rel. Hermann* v. *Kaufman,* 121 App. Div. 599; *People ex rel. Erie R. R. Co.* v. *Webster,* 49 App. Div. 556; *People ex rel. N. Y., O. & W. R. Co.* v. *Wakeman,* 143 App. Div. 816.)

*Creighton S. Andrews* for respondent. The construction placed upon section 21a of the Tax Law by appellants is not tenable. (*Matter of Armory Board,* 73 App. Div.

152; Cooley on Taxn. [2d ed.] 409–411; *State* v. *Abbott,* 42 N. J. L. 111; *T. & B. R. R. Co.* v. *Lee,* 13 Barb. 169; *Matter of Water Comrs.,* 96 N. Y. 351; *Matter of Staten Island,* 103 N. Y. 251; *People ex rel. Young* v. *Willis,* 35 N. Y. S. R. 176; *People ex rel. Twenty-third St. Co.* v. *Comrs.,* 95 N. Y. 554; *People* v. *Mayor, etc.,* 4 N. Y. 419.) The theory adopted by the trial court for the review of this assessment was correct. (*People ex rel. Kemp* v. *O'Donnell;* 198 N. Y. 48.) The allegations of the petition and writ were sufficient and warranted the admission of all of the relator's testimony. (*Matter of City of New York* v. *Sloat,* 116 App. Div. 815; *People ex rel. Glenhead Co.* v. *Garland,* 72 Misc. Rep. 413; *People ex rel. Wittaus* v. *O'Donnell,* 46 Misc. Rep. 519; *People ex rel. Syperrek* v. *McAdoo,* 125 App. Div. 673; *People ex rel. Hagerty* v. *McClelland,* 107 App. Div. 272; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Budlong,* 25 App. Div. 393; *People ex rel. Ward* v. *Feitner,* 61 App. Div. 456; 168 N. Y. 677; *People ex rel. Broadway Co.* v. *Feitner,* 61 App. Div. 156; *Matter of City of N. Y.,* 117 App. Div. 811; *People ex rel. Bronx Gas Co.* v. *Feitner,* 43 App. Div. 198; *People ex rel. Edison Co.* v. *Feitner,* 86 App. Div. 46.)

WILLARD BARTLETT, Ch. J. In a certiorari proceeding under the Tax Law, the Supreme Court has reduced an assessment of the relator's real property in the city of Olean from $24,800 to $20,400. The final order to this effect has been unanimously affirmed by the Appellate Division. The assessment was found to be unequal as compared with the other assessments generally on the same roll and to have been made at a higher proportionate valuation than other assessments of similar property by the same assessors. This finding is conclusive upon us unless some substantial error is disclosed by the record.

The higher proportionate valuation of the relator's property was proved by comparing its value with that of other

pieces of property in the neighborhood of the same general class and character. According to the opinion of the learned judge at Special Term the relator presented to the assessors on grievance day proof of the respective values of twenty-seven properties that were assessed at from 50% to 83% of their values, the average being 67%; and by an order made at the hearing on the writ of certiorari the number of properties to be selected for the purpose of comparison was limited to ten. The record would be more satisfactory if it contained more evidence than it does as to the substantial similarity between the improvements on the parcels thus used for comparison and those upon the lands of the relator. I find only one objection and exception, however, on this ground, and that relates to a single piece of property known as the Samuel Pancoast Estate. As to the other pieces there seems really to have been no dispute as to their suitability for purpose of comparison; and the appellants can hardly rely on any alleged error in this respect inasmuch as they argue no such point in their brief. Furthermore, I think that in the absence of contradiction the proof of substantial similarity was sufficient.

The court at Special Term held that these ten properties had been assessed on an average at only 75% of their respective values while the relator's property had been assessed at more than 100%. The relator's property is a triangular lot having a frontage of 240 feet on Laurens street and 305 feet on First and Second streets. Upon it there is a large frame dwelling facing Laurens street, and there is also a frame barn in the rear corner of the lot near Second street. The property has heretofore been used solely for residential purposes and has never been subdivided into lots. The assessors, however, treated it as capable of being thus subdivided into a number of building lots and estimated that if this were done the frontage of 240 feet on Laurens street would be worth $42 a front foot, 155 feet on First street $35 a front foot

and 150 feet on Second street $40 a front foot, making a total of $21,330 for the land. They assessed the value of the dwelling house and barn at $3,470; aggregating $24,800 for the whole property.

The learned judge at Special Term thought that the course pursued by the assessors involved considerations which were essentially speculative in character, depending upon conditions that might or might not exist; and he declared that he would be unwarranted in accepting the testimony of real estate agents who based their opinion evidence as to values upon the conjectured outcome of a proposed venture in subdividing the property and offering it for sale in lots. The true rule applicable to property situated like that of the relator was correctly stated by Mr. Justice CULLEN in *Matter of Daly* v. *Smith* (18 App. Div. 194, 197) where he said: " It is doubtless true, and settled by authority, that the landowner is not limited in compensation to the use which he makes of his property, but is entitled to receive its greatest value for any purpose. But still it is the market value of the property that is the measure of the compensation. When, therefore, it is sought to show that a tract of land has a use for a particular purpose, it must also be shown that it is marketable for that purpose, or has an intrinsic value. * * * Nearly any tract of land or any farm can be cut up into lots or villa sites. The question is not whether it can be so subdivided, but whether purchasers for the lots can be found, and also how speedily found. For if only small parts can be sold at intervals, and a number of years must elapse before the whole property can be disposed of, it is apparent that it would be unfair to take as a present value of the property a sum only to be realized after a long lapse of time." The propriety of pursuing the course adopted by the assessors in the present case, therefore, depended upon the question whether the relator's property was presently marketable if subdivided according to their assumption. That question, however, is not particularly impor-

tant upon this appeal as it was considered by the court only in estimating the weight to be given to certain testimony, and not at all upon the main issues in the proceeding.

For the purpose of establishing the higher proportionate valuation of the relator's property as compared to the ten other selected pieces witnesses called in her behalf valued her property as a whole; and the defendants contend that it was error to permit this to be done inasmuch as such proof was not a proper basis upon which to compare the assessment. The relator's son was asked what was the fair market value of the property occupied by his mother in August, 1913, at the corner of First, Second and Laurens streets. This was objected to as incompetent and immaterial, and " not a proper rule upon which to compare this assessment; " the objection was overruled and counsel for the defendants excepted. Counsel for the defendants then said: " Let us stipulate that all of the evidence as to the actual value shall be received under the same objection and exception." To this the court responded, " Yes."

It is contended that this objection, exception and stipulation sufficed to raise two questions of law upon this appeal: (1) Is it competent in a certiorari proceeding under the Tax Law for the purpose of showing inequality in valuation to compare the gross assessment of the relator's property with the gross assessment of other similar properties on the assessment roll ? and (2) Is the sole comparison permissible in such a proceeding for such purpose a comparison between a valuation of the land made by the assessors and the values of other similar lands, and the valuation of the building made by the assessors and the values of other similar buildings ?

In behalf of the appellants it is argued that the second method of comparison is the only one which can be permitted under section 21a of the Tax Law (Cons. Laws, ch. 60) which was added to that statute by amendment

in 1911 (Laws of 1911, ch. 117). That section provided as follows:

"§ 21-a. Assessment-rolls in cities. In all cities there shall be an additional column in the assessment-roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of buildings thereon. The total assessment only can be reviewed."

Here we have, *first,* a direction to the assessors, and, *second,* a direction to the court which may review their determination.

The only difficulty in construing this amendatory section to the Tax Law is due to the final sentence; but I think its meaning is tolerably plain. In my opinion it is merely a prohibition against an attempt to review the assessed value of the land exclusive of the buildings thereon separately from the value of the entire real property which is the subject of assessment — that is to say, the land and the buildings thereon. Thus construed it is not at variance with the previous provisions of the enactment.

We are not concerned on this appeal with the direction to the assessors contained in section 21-a of the Tax Law for it is not contended that they disregarded its provisions in any respect. The fault which the Supreme Court found with their action as evidenced by the findings at Special Term was that the assessment of the relator's property was unequal as compared with the other assessments generally on the same roll and was made at a higher proportionate valuation than other assessments of similar properties on the same roll by the same assessors. For this reason the assessment was reduced as already stated.

The principal grievance asserted by the appellants is that the court at Special Term in thus reducing the assessment acted upon evidence as to the value of the land and buildings as a whole. I can find nothing in the Tax Law which would warrant us in holding that it

erred in receiving such evidence. That statute requires
the assessors in preparing the assessment roll to place in
the second column the quantity of real property taxable
to each person. (Tax Law, § 21, subd. 2.) The amend-
ment of 1911 (§ 21-a) provides for an additional column in
cities in which shall be set down the value of the land
exclusive of the buildings thereon. Here we find provi-
sion made for two items in the assessment roll relating to
real property, the one embracing the land alone, the other
embracing the land and the buildings on it. There is
nothing in either provision indicating any intent on the
part of the legislature to the effect that, when a compari-
son thereafter comes to be made in court in order to
ascertain whether equality in the assessment has been
observed, such comparison shall be confined to one of
these items instead of being permitted as to both. In my
opinion the law leaves the property owner claiming to be
aggrieved by inequality in the assessment of his real prop-
erty at liberty to attack the assessment by comparing the
gross valuation placed upon his property with the gross
valuation of other similar property upon the assessment
roll; and he is also at liberty to compare the assessed valu-
ation placed upon his land alone with the values placed
upon the land only in the case of other properties of like
character and situation. I can find no restriction in the
law which forbids the aggrieved taxpayer from resorting
to either method.

Certainly there is no ruling in the record below before
us which prevented the defendants from making the com-
parison of land and buildings separately. It discloses
repeated instances in which witnesses were allowed to
testify as to such separate values. Thus, Mr. James
Haven in valuing the relator's property said he did not
allow anything for the buildings. Mr. George Fobes in
valuing the Morris property did not consider the build-
ings of any value to the lot at all. Mr. Leon H. Ballard
valued the same lot without reference to the building;

Mr. Julius M. Harris testified to the value per front foot of the Jepson property without regard to the buildings, and, finally, Mr. William M. Abrams gave opinion evidence as to the value of the relator's house alone and without reference to the land. I mention these instances only to show that no ruling was made adverse to the admission of such testimony as the appellants insist should have been received. I cannot, however, accede to the proposition that other testimony — namely a comparison of the gross values — was not also receivable. Upon a careful examination of the whole record I conclude that no error was committed by the learned judge at Special Term which would warrant us interfering with the conclusion which he reached. I, therefore, advise an affirmance of the order appealed from, with costs.

POUND, J. I vote for affirmance for the following reasons:

1. Section 21, subdivision 3, of the Tax Law requires the assessors to set down "the full value" of real property.

2. Section 21-a of the Tax Law provides that "the total assessment only can be reviewed."

3. The total assessment should equal the full value of the real property, whether the land, exclusive of the buildings, is valued separately as provided by section 21-a or not. There is but one "full value," which should be the same by whatever method determined.

4. Evidence of the full value of real property was, therefore, competent.

5. No point survives the unanimous affirmance below, other than that raised by the objection to evidence of the full value of real property, which does not in my opinion present reversible error.

SEABURY, J. (dissenting). This is an appeal from an order of the Appellate Division affirming a final order of the

Special Term reducing an assessment upon real property. The proceeding was commenced by writ of certiorari. The assessment thus sought to be reviewed was made by the board of assessors in and for the city of Olean. The property assessed consisted of a large tract of land only one block from the principal business street in the city. It had a frontage of 240 feet on Laurens street and 305 feet on both First and Second streets, and composed substantially one-half of a city block. Upon the premises is a large frame dwelling and a frame barn. The buildings are in good repair. The part of the premises not covered by the buildings referred to was maintained as a lawn with trees and shrubs and was surrounded by an iron fence. The defendants assessed the land exclusive of the buildings at $21,330 and the whole property including the buildings at $24,800. In making this assessment the assessors fixed the value of the land fronting on Laurens street at $42 per foot and that fronting on First street at $40 per foot and that fronting on Second street at $35 per foot. Only 150 feet frontage on First and Second streets was assessed thus allowing a depth of 150 feet for the land fronting on Laurens street. Upon the trial the relator called witnesses to prove the *gross value* of the property. This value was based upon the witnesses' estimates *of its present use.* This evidence was objected to upon the ground "That it is incompetent and immaterial; it is not a proper rule upon which to compare this assessment." This objection was overruled and an exception taken by the appellants. The other evidence of value that was offered was of the same character and it was all received subject to this objection and the exception of the appellants. It was impossible from the evidence of value that was received for the court to separately determine the value of the land and the buildings thereon. Such evidence could be of service only if the court was justified in determining the gross value of the land and buildings. The trial court did not assume to determine separately

the value of the land and buildings and there is no basis in the record upon which such a determination could be made. Similar evidence was offered as to other properties in the same neighborhood, no separate statement being made as to the value of the land and buildings. Upon proof of this character the court assumed to review the assessment in the manner indicated and found that ten other properties including land and buildings were assessed at a lower proportion of their value than the relator's property and concluded that the gross value of the relator's property was $24,000 and that the assessment should be reduced for the purpose of equalization to the sum of $20,400. The assessors separately assessed the land and the buildings thereon in determining the amount of the assessment of the relator's property and applied the same method as to all other properties in the same vicinity. The Supreme Court upon review disregarded this method and estimated the gross value not only of the relator's property but the property of others in the same vicinity with which it compared the assessment imposed upon the relator's property. The assessors and the court having pursued different methods of assessment naturally arrived at different results. The result arrived at by the court followed as a consequence from receiving in evidence estimates of the gross value of the property. The exceptions taken by the appellants to the introduction of this evidence fairly present the question whether the assessors or the Supreme Court applied the correct method of assessment. In my opinion that question should be determined and not avoided or left unsettled on the plea that it is not raised in view of the fact that it is the only question in the case and has been the subject of conflicting contentions from the outset of this litigation. The answer to this question must be found in the statute. The statute governing the subject is section 21-a of the Tax Law (L. 1911, ch. 117). That statute provides as follows: "In all cities there shall

be an additional column in the assessment-roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of buildings thereon. The total assessment only can be reviewed." That this statute contemplated that the assessors should separately assess the land and the buildings thereon is too plain for argument, and does not seem to be disputed upon this appeal. The contention is made that although this method is provided as the proper method to be pursued by the assessors, the court upon review may pursue a different method and base the assessment upon the gross value of the land and buildings. It is settled law that tax assessors must assess property in the manner provided by law, and that the court upon review must pursue the same method of assessment. The court reviewing an assessment is no more at liberty to depart from the statute and to devise unauthorized methods of assessment than are the assessors. Any other rule would result in injustice and absurdity. If the court may pursue a different method of assessment than that prescribed by statute then where the assessors follow the statute, and the property owner appeals, the determination of the assessors may be reversed and a different conclusion reached, for no other reason than that the court prefers a different method of assessment. There is no justification in the plain provision of the statute now under consideration for attributing to the legislature so unreasonable an intention. If it be true that in assessing the property of the relator the assessment made was out of proportion to the assessment of other pieces of property, that error can be corrected upon another hearing, but the method pursued by the Special Term afforded no opportunity for making a comparison of the assessments and was made pursuant to a method not sanctioned by law. It is suggested that the provision of the statute that "The total assessment only can be reviewed" sanctions this inter-

pretation. On the contrary I think the plain meaning of that provision is that the property owner should not be permitted to review the assessment upon the land in one proceeding and the assessment of the buildings in another. The court is required to review the total assessment only, so that if the land has been assessed by the assessors at too much and the buildings at too little or the land at too little and the buildings at too much, both assessments can be corrected at the same time and in the same proceeding. While, therefore, the total assessment only can be reviewed, it must be reviewed under the same method of assessment which the assessors are directed by statute to apply in making the original assessment. Section 21-a of the Tax Law is to be construed in connection with section 293 of that law, which provides that upon a review of the assessment the court may order a re-assessment of the property or the correction of the assessment "In such manner as shall be in accordance with law." The learned court at Special Term disregarded the statute and having based its conclusion upon estimates of the *gross value* of the property of the relator and other pieces of property with which it compared the value of the relator's property its action should be reversed. It is argued that the properties with which the relator's assessment was compared were assessed at 60 to 70 per cent of their true value and that the value of the relator's property when determined with regard to the use which the owner made of it was relatively higher than the assessment upon the property with which it was compared. This contention reveals a misconception of the provisions of the Tax Law and a method of assessment which is clearly unlawful. The Tax Law of this state provides that real property shall be assessed at its true value (§ 21, subd. 3). It is apparent that the value of land is not determined by the use which the owner makes of it. The use to which the land is put is no criterion of the value of the land. For example, a piece

of land on the corner of Broadway and Wall street, in the city of New York, has a definite value regardless of the use to which it may be put. If the owner should elect to maintain a farm upon it that fact would not furnish a reason why it should be assessed at the same valuation at which lands ordinarily used for farms are assessed. The land itself has a definite market value and it is upon this value that the law prescribes that the assessment shall be made. In determining that the relator's property was unequally assessed the learned court below compared its gross value with the gross value of ten other pieces of property in the same neighborhood. There was no evidence to show the value of the land exclusive of the buildings as to any of these properties. For all that appears from the record some of these pieces of land may have had very valuable buildings upon them and some may have had buildings of very little value. It is obvious that without discriminating between the value of the land and the buildings thereon there was no basis for comparison. I do not assert, and it is not claimed, that if there was sufficient evidence in the record of the value of the land assessed exclusive of the buildings and the value of the land with which the relator's assessment was compared, that the reception in evidence of the gross value of other neighboring properties would constitute reversible error. In that event the reception of evidence as to gross value would be harmless and immaterial. I can find no proof in the record to show that the buildings on the land of the relator were of substantially the same character as the buildings on the parcels with which the relator's assessment was compared. The primary purpose of the statute under consideration was to require a separate assessment of the land and buildings so that a property owner could compare the assessment of his land with the assessment of other pieces of land in the same neighborhood. The construction given to this statute by the court below results in its nullification and ought not

to be approved.    In my opinion the order appealed from should be reversed, with costs.

CARDOZO, J.    I dissent and vote for reversal on the ground that error was committed in comparing the gross assessments of various parcels without evidence that the improvements were substantially the same, and that error was also committed in the ruling that the value of the land, if subdivided into lots, was not an element to be considered in determining its value for the purpose of taxation.

HISCOCK, CHASE and COLLIN, JJ., concur with WILLARD BARTLETT, Ch. J., and POUND, J., in memorandum, also concurs; SEABURY, J., reads dissenting opinion, and CARDOZO, J., dissents in memorandum.

Order affirmed.