PEOPLE ex rel. MORSE DRY DOCK AND REPAIR COMPANY, Relator, *v.* LAWSON PURDY et al., as Commissioners of Taxes and Assessments of the City of New York, Defendants.

(Supreme Court, Kings Special and Equity Term, July, 1917.)

Taxes — upon real property — review of assessments — Greater New York charter — city of New York — Tax Law, § 21-a.

The general Tax Law is to be read in connection with the provisions of the Greater New York charter, and control in the absence of conflicting charter requirements, and, as the charter does not deal with the procedure as to how assessments may be reviewed, the provision of section 21-a of the Tax Law, which provides that "In all cities there shall be an additional column in the assessment roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of buildings thereon. The total assessment only can be reviewed," is controlling.

In proceedings to review assessments on certain real property in the city of New York for the years 1915, 1916 and 1917, it appears that the unimproved assessment valuation for 1915 was $702,100 and the improved valuation $855,200; that in 1916 the unimproved valuation was the same as in the previous year and the improved valuation $871,500 and that in 1917 the unimproved was $704,500 and the improved valuation $874,200. By stipulation, in exact accord with section 21-a of the Tax Law, the parties agreed as to the value of the improvements in each of these years each of which values was less than the amount included in the assessments. The court found as a fact that the value of the property unimproved in each of these years was worth at least as much more than the amounts for which it was assessed as the agreed value of the improvements is less than their assessed value in the same years. *Held*, that the increased valuation should be added to the agreed valuation of the improvements and the total assessments for the three years must be sustained.

PROCEEDINGS to review assessments for the years 1911–1917, inclusive.

Ball & Oldis (John Hill Morgan, of counsel), for relator.

Lamar Hardy, Corporation Counsel (R. M. De Acosta, of counsel), for defendants.

CROPSEY, J.   Seven proceedings to review the assessments for the years 1911–1917 inclusive were tried together.   At the close of the trial the court announced its decision on the facts.   Comment was then made and properly so upon the testimony of some of the witnesses as to the valuation.   For one of the years the lowest estimate was $356,000 and the highest $1,481,000 — the latter amount being more than four times that of the lowest estimate.

The question that remains relates only to the proceedings for the years 1915–1916· and 1917.   It is a question of law and arises in this manner.   The unimproved assessment valuation for 1915 was $702,100, and the improved valuation $855,200.   In 1916 the unimproved valuation was $702,100 and the improved valuation $871,500.   In 1917 the unimproved valuation was $704,500 and the improved valuation $874,-200.   By stipulation the parties agreed as to the value of the improvements in each of these three years.   Each of these agreed values was less than the amount included in the assessments.   The court has found as a fact that the value of the property unimproved in each of these years was worth at least as much more than the amounts for which it was assessed as the agreed value of the improvements is less than their assessed value in the same year.   The question is whether such increased unimproved valuation can be added to the agreed reduced valuation of the improvements and thus the total assessments be sustained.

Prior to 1903 there was no requirement by statute

that the unimproved valuation be stated separately from the improved valuation, but by chapter 454 of the laws of that year section 892 of the Greater New York Charter was amended by the insertion of such a provision. Thereafter and until 1911 when the Tax Law was amended by the adoption of section 21-a the assessed valuations of property unimproved and improved were treated separately, and if on review the unimproved valuation was found excessive the total assessment had to be reduced although the total value might have been found to be as great as that fixed by the assessors. *People ex rel. Kemp R. E. Co. v. O'Donnel,* 198 N. Y. 48.

The amendment to the Tax Law adding section 21-a was made shortly after the above decision was rendered. This section reads as follows: "Assessment-rolls in cities. In all cities there shall be an additional column in the assessment-roll before the column in which is set down the value of real property, and in such additional column there shall be set down the value of the land exclusive of buildings thereon. The total assessment only can be reviewed." The first sentence of this section is not unlike the provision of section 892 of the Greater New York charter. The last sentence, however, is not in the charter nor is there any provision therein as to how such assessments can be reviewed. The General Tax Law of the state is to be read in connection with the provisions of the city charter and control in the absence of some conflicting charter requirements. *People ex rel. Lazarus* v. *Feitner,* 65 App. Div. 316, 321, 322; affd., 169 N. Y. 604. As the charter does not deal with procedure in this matter the provision of the Tax Law is controlling. *People ex rel. Thomson* v. *Feitner,* 168 N. Y. 441–456.

The meaning of the provision of this section, that " the total assessment only can be reviewed," appears

to be plain. This would be so even if it had not been passed shortly after the *Kemp* case was decided. But that fact emphasizes what the legislature intended, and the section has been construed to mean just what it says.

" It is merely a prohibition against an attempt to review the assessed value of the land exclusive of the buildings thereon separately from the value of the entire real property which is the subject of assessment — that is to say, the land and the buildings thereon." *People ex rel. Strong* v. *Hart,* 216 N. Y. 513, 519. And in the dissenting opinion by Judge Seabury in the same case he said (at p. 525) : " The court is required to review the total assessment only, so that if the land has been assessed by the assessors at too much and the buildings at too little or the land at too little and the buildings at too much, both assessments can be corrected at the same time and in the same proceeding," None of the court appears to have dissented from this statement.

The question under consideration has been directly passed on. The holdings have been in accord with the construction of the section set forth in the *Strong* case. So where the total valuation has been found to equal the assessment the assessment has been upheld although the court found that either the land or the buildings by themselves were of less value than fixed by the assessors. *People ex rel. Straus* v. *Purdy,* N. Y. L. J., June 1, 1917, opinion by Hendrick, J.; *People ex rel. Boskowitz* v. *Purdy,* Id., Jan. 16, 1915, opinion by Erlanger, J.

The decisions in *Havemeyer* v. *Purdy,* N. Y. L. J., Sept. 24, 1915, opinion by Manning, J., and *Tenth & Twenty-third Street Ferry Co.* v. *Purdy,* Id., March 1, 1916, opinion by Kelly, J., are not to the contrary. They merely hold that a relator makes out a *prima*

*facie* case when he shows that either his land or his building has been assessed by the city for more than its value. Neither of these cases holds that it is not the total assessment which is to be reviewed. On the contrary, they expressly recognize that to be the fact.

The stipulation entered into by the parties fixing the value of the improvements is in exact accord with the provisions of section 21-a and with the decisions construing it. It follows that the assessments for the three years in question must be sustained and as to those years the writs dismissed, with costs. The property unimproved for each of these years is found to be of the value of at least the following: For 1915, $734,733; 1916, $732,500; 1917, $734,200. The assessments for the years 1911, 1912, 1913 and 1914 are reduced as decided at the close of the trial, with costs to the relator.

Ordered accordingly.